UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

STACY E. CAMERON,

    Plaintiff,                                                 Case No. 3:19-cv-208

vs.

COMMISSIONER OF SOCIAL SECURITY,     District Judge Walter H. Rice
                                                                              Magistrate Judge Michael J. Newman

    Defendants.

_____

**REPORT AND RECOMMENDATION[1] THAT: (1) THE NON-DISABILITY
FINDING AT ISSUE BE FOUND UNSUPPORTED BY SUBSTANTIAL EVIDENCE,
AND REVERSED; (2) THIS MATTER BE REMANDED TO THE COMMISSIONER
UNDER THE FOURTH SENTENCE OF 42 U.S.C. § 405(g) FOR PROCEEDINGS
CONSISTENT WITH THIS OPINION; AND (3) THIS CASE BE CLOSED**
_____

       This is a Social Security disability benefits appeal.  At issue is whether the Administrative Law Judge ("ALJ") erred in finding Plaintiff not "disabled" and therefore unentitled to Supplemental Security Income ("SSI") and/or Disability Insurance Benefits ("DIB").[2]  This case is before the Court upon Plaintiff's Statement of Errors (doc. 9), the Commissioner's memorandum in opposition (doc. 12), the administrative record (doc. 8), and the record as a whole.[3]

**I.**

**A.**     **Procedural History**

       Plaintiff filed for DIB and SSI alleging a disability onset date of February 8, 2011.  PageID 349-61.  Plaintiff claims disability as a result of a number of alleged impairments including, *inter*

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendation.

[2] "The Commissioner's regulations governing the evaluation of disability for DIB and SSI are identical . . . and are found at 20 C.F.R. § 404.1520, and 20 C.F.R. § 416.920 respectively." *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  Citations in this Report and Recommendation to DIB regulations are made with full knowledge of the corresponding SSI regulations, and *vice versa*.

[3] Hereafter, citations to the electronically-filed record will refer only to the PageID number.

*alia*, diabetes mellitus, sleep apnea, fibromyalgia, asthma, degenerative joint disease of the knees, depression, anxiety, and posttraumatic stress disorder ("PTSD"). PageID 1777.

After initial denial of her applications, Plaintiff received a hearing before ALJ Gregory Kenyon on January 4, 2016. PageID 88-146. The ALJ issued a written decision on March 2, 2016 finding Plaintiff not disabled. PageID 66-79. Specifically, the ALJ found at Step Five that, based upon Plaintiff's residual functional capacity ("RFC") to perform a reduced range of light work,[4] "there are jobs in that exist in significant numbers in the national economy that [she] can perform[.]" *Id*. Following the Appeals Council's request for review, Plaintiff appealed the ALJ's March 2, 2016 decision to this Court, which reversed the ALJ's non-disability finding and remanded the matter to the Commissioner under the Fourth Sentence of 42 U.S.C. § 405(g) for further proceedings. PageID 1900-13.

On remand, Plaintiff received another hearing before the ALJ on February 26, 2019. PageID 1860-98. Following that hearing, the ALJ issued a written decision on April 29, 2019, again finding Plaintiff not disabled. PageID 1774-96. Specifically, the ALJ concluded that, based on Plaintiff's RFC to perform a reduced range of light work, "there are jobs that exist in significant numbers in the national economy that [she] can perform." PageID 1774-96.

Plaintiff did not seek Appeals Council review of the ALJ's decision on remand and, instead, timely filed this appeal. *See* 20 C.F.R. § 404.984(c) and (d) (in a case remanded by a Federal Court, "[i]f no exceptions are filed and the Appeals Council does not assume jurisdiction

---

[4] Light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" and "requires a good deal of walking or standing, or . . . sitting most of the time with some pushing and pulling of arm or leg controls." *Id*. § 404.1567(b). An individual who can perform light work is presumed also able to perform sedentary work. *Id*. Sedentary work "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties." *Id*. § 404.1567(a).

2

of [the] case, the decision of the [ALJ] becomes the final decision of the Commissioner after remand").

### B. Evidence of Record

The evidence of record is adequately summarized in the ALJ's decision (PageID1774-96), Plaintiff's Statement of Errors (doc. 9), and the Commissioner's memorandum in opposition (doc. 12). The undersigned incorporates all of the foregoing and sets forth the facts relevant to this appeal herein.

## II.

### A. Standard of Review

The Court's inquiry on a Social Security appeal is to determine (1) whether the ALJ's non-disability finding is supported by substantial evidence, and (2) whether the ALJ employed the correct legal criteria. 42 U.S.C. § 405(g); *Bowen* v. *Comm'r of Soc. Sec.,* 478 F.3d 742,745-46 (6th Cir. 2007). In performing this review, the Court must consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). When substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if substantial evidence also exists in the record upon which the ALJ could have found Plaintiff disabled. *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Thus, the ALJ has a "'zone of choice' within which he [or she] can act without the fear of court interference." *Id.* at 773.

The second judicial inquiry -- reviewing the correctness of the ALJ's legal analysis -- may result in reversal even if the ALJ's decision is supported by substantial evidence in the record. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). "[A] decision of the

Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen*, 478 F.3d at 746.

### B. "Disability" Defined

To be eligible for disability benefits, a claimant must be under a "disability" as defined by the Social Security Act. 42 U.S.C. § 423(d)(1)(A). Narrowed to its statutory meaning, a "disability" includes physical and/or mental impairments that are both "medically determinable" and severe enough to prevent a claimant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *Id.*

Administrative regulations require a five-step sequential evaluation for disability determinations. 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step ends the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), the complete sequential review poses five questions:

1. Has the claimant engaged in substantial gainful activity;

2. Does the claimant suffer from one or more severe impairments;

3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments (the "Listings"), 20 C.F.R. Subpart P, Appendix 1;

4. Considering the claimant's RFC, can he or she perform his or her past relevant work; and

5. Assuming the claimant can no longer perform his or her past relevant work -- and also considering the claimant's age, education, past work experience, and RFC -- do significant numbers of other jobs exist in the national economy which the claimant can perform;

20 C.F.R. § 404.1520(a)(4); *see also Miller v. Comm'r of Soc. Sec.,* 181 F. Supp.2d 816, 818 (S.D. Ohio 2001). A claimant bears the ultimate burden of establishing disability under the Social

4

Security Act's definition. *Key v. Comm'r of Soc. Sec.*, 109 F.3d 270, 274 (6th Cir. 1997).

### III.

On appeal, Plaintiff argues that the ALJ erred by failing to properly weigh the opinions of her treating physician Carol Barlage, M.D. Doc. 9 at PageID 2691. The undersigned agrees.

Until March 27, 2017, "the Commissioner's regulations [that apply to this appeal] establish[ed] a hierarchy of acceptable medical source opinions[.]" *Snell v. Comm'r of Soc. Sec.*, No. 3:12-cv-119, 2013 WL 372032, at *9 (S.D. Ohio Jan. 30, 2013). In descending order, these medical source opinions are: (1) treaters; (2) examiners; and (3) record reviewers. *Id*. Under the regulations in effect prior to March 27, 2017, the opinions of treaters are entitled to the greatest deference because they "are likely to be . . . most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations[.]" 20 C.F.R. § 404.1527(c)(2).

A treater's opinion must be given "controlling weight" if "well-supported by medically acceptable clinical and laboratory diagnostic techniques and . . . not inconsistent with the other substantial evidence in [the] case record." *LaRiccia v. Comm'r of Soc. Sec.*, 549 F. App'x 377, 384 (6th Cir. 2013). Even if a treater's opinion is not entitled to controlling weight, "the ALJ must still determine how much weight is appropriate by considering a number of factors,[5] including the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record

---

[5] In essence, "opinions of a treating source . . . must be analyzed under a two-step process, with care being taken not to conflate the steps." *Cadle v. Comm'r of Soc. Sec.*, No. 5:12-cv-3071, 2013 WL 5173127, at *5 (N.D. Ohio Sept. 12, 2013). Initially, "the opinion must be examined to determine if it is entitled to controlling weight" and "[o]nly if . . . the ALJ does not give controlling weight to the treating physician's opinion is the opinion subjected to another analysis based on the particulars of" 20 C.F.R. § 404.1527. *Id*.

5

as a whole, and any specialization of the treating physician." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also* 20 C.F.R. § 404.1527(c).

In this case, Dr. Barlage first offered an opinion in October 2015 regarding work-related limitations arising from Plaintiff's physical impairments.[6] *See* PageID 1522-24. Specifically, Dr. Barlage opined that Plaintiff could lift up to 5 pounds frequently; occasionally lift up to 10 pounds; rarely lift up to 20 pounds; never lift over 20 pounds; occasionally reach and handle with either hand; frequently finger with either hand; stand for only 30 minutes at a time; walk for a total of one hour per workday; sit for only a total of one hour per workday; never crawl or climb ladders; occasionally bend, crouch, squat, and climb stairs; and never reach above shoulder level. *Id*. In addition, Dr. Barlage concluded that Plaintiff would have five or more unscheduled absences from work per month.[7] *Id*.

In February 2019, Dr. Barlage updated her opinions regarding Plaintiff's physical limitations. *See* PageID 2560-65. At that time, Dr. Barlage opined that Plaintiff could frequently lift up to 5 pounds; occasionally lift up to 20 pounds; never lift over 20 pounds; frequently reach, handle, and finger; stand and walk up to 2 hours per workday for 15 minutes at a time; sit up to 4 hours per workday for 30 minutes at a time; never crouch, squat, crawl or climb ladders; and

---

[6] In October 2015, Dr. Barlage also co-signed an opinion -- along with Plaintiff's treating counselor, Stephanie Wilson, L.P.C. -- regarding Plaintiff's work-related mental limitations. *See* PageID 1647-49. At that time, Dr. Barlage specifically agreed that Plaintiff has a "marked" impairment in her ability to accept instruction from or respond appropriately to criticism; perform at a consistent pace and complete work tasks; maintain attention and concentration for more than brief periods of time; behave predictably, reliably, and in an emotionally stable manner; maintain appearance and hygiene; and tolerate customary work pressures. *Id*. She further opined that Plaintiff possesses extreme impairment in her ability to perform at production levels. *Id*. Dr. Barlage further opined that, Plaintiff would likely miss 5 or more days of work each month due to her mental impairments. *Id*. Notably, "moderate" functional limitations are "non-disabling," *see Sims v. Comm'r of Soc. Sec.*, 406 F. App'x 977, 980 (6th Cir. 2011), whereas "marked" and "extreme" limitations are suggestive of disability. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(C), *et seq.; Holland v. Comm'r of Soc. Sec.*, No. 3:14-CV-246, 2015 WL 6891032, at *4 (S.D. Ohio July 6, 2015).

[7] According to the Vocational Expert ("VE") who testified in this case, a person could not maintain competitive employment if absent more than once per month. PageID 1895.

occasionally bend and climb steps. PageID 2560-62. Dr. Barlage also opined at that time that Plaintiff would likely miss 2 or more partial or whole days of work per month because of her physical impairments.[8] *Id.*

The ALJ gave Dr. Barlage's opinion regarding Plaintiff's physical limitations "significant, but partial weight." PageID 1790. More specifically, the ALJ agreed with Dr. Barlage's 2019 opinion regarding Plaintiff's ability to lift 20 pounds occasionally, as well as Dr. Barlage's 2019 opinion concerning Plaintiff's inability to crouch, crawl, climb ladders, climb ropes, climb scaffolds, and ability to occasionally bend and climb steps. *Id.* However, the ALJ rejected Dr. Barlage's opinion regarding Plaintiff's limitations in sitting, standing, walking, using her upper extremities, and attending work without unscheduled absences. *Id.*

In rejecting Dr. Barlage's opinion regarding limitations in standing and walking, the ALJ relied on an apparent "lack of significant findings following bilateral knee surgeries[.]" *Id.* Notably, it appears Plaintiff underwent knee surgeries on May 4, 2017 and again on January 18, 2018. PageID 2252, 2277-81. Records after Plaintiff's May 2017 surgery, as well as after her January 2017 surgery, however, continue to note that she not only walks with a limp, but that physical examinations of her knees revealed tenderness, limited range of motion, and pain -- albeit oftentimes described as mild to moderate findings. *See, e.g.,* PageID 2248, 2251, 2254, 2258, 2351, 2354, 2357, 2677, 2681. Because a more fundamental error exists with regard to the ALJ's

---

[8] Dr. Barlage also updated her opinion regarding Plaintiff's mental limitations in February 2019, concluding that Plaintiff has a marked impairment in her ability to accept instruction from or respond appropriately to criticism from supervisors or superiors; relate to the general public and maintain socially appropriate behavior; perform and complete work tasks in a normal workday or work week at a consistent pace; maintain attention and concentration for more than brief periods of time; perform at production levels expected by most employers; respond appropriately to change in work setting; behave predictably, reliably and in an emotionally stable manner; and tolerate customary work pressures. PageID 2563-65. Additionally, Dr. Barlage opined that Plaintiff would miss 2 or more partial or whole days of work a month because of her mental impairments. *Id.*

conclusion in this regard, the undersigned makes no finding as to whether substantial evidence supports the ALJ's factual finding in this regard.

Instead, the undersigned finds that -- even assuming, *arguendo*, the ALJ was correct in finding that no significant findings appear in the record following Plaintiff's knee surgeries in May 2017 and January 2018 – the ALJ erred because his conclusion in this regard ignores the fact that, for purposes of Plaintiff's DIB application, she alleges disability beginning February 8, 2011 (over six years before her first knee surgery) through her date last insured ("DLI") of December 31, 2016 (five months before her first knee surgery). *See* PageID 349-61, 1776. As this Court has noted, "medical evidence concerning a time after a claimant's DLI 'is only minimally probative'" of a one's disability status. *McNier v. Comm'r of Soc. Sec.*, 166 F. Supp. 3d 904, 911 (S.D. Ohio 2016) (*citing Jones v. Comm'r of Soc. Sec.*, No. 96–2173, 1997 WL 413641, at *1 (6th Cir. July 17, 1997). Thus, in this case, any improvement in Plaintiff's knees following her knee surgeries has little no relevance in assessing her DIB claim because they occurred after her DLI.

Any improvement in Plaintiff's knee impairments following surgery would certainly have relevance to her application for SSI. "The proper inquiry in an application for SSI benefits is whether the plaintiff was disabled on or after her application date." *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993). Thus, "[i]n an application for SSI, the relevant period is the date of the [SSI] application through the date of the ALJ's determination." *Henrich v. Soc. Sec. Comm'r*, --- F. Supp.3d ---, No. 2:19-CV-10675-TGB, 2020 WL 806194, at *2 fn1 (E.D. Mich. Feb. 18, 2020); *see also Grimes v. Comm'r of Soc. Sec.*, No. 3:13-CV-299, 2015 WL 4550338, at *6 (S.D. Ohio Mar. 3, 2015).

Here, Plaintiff filed her SSI application on March 29, 2014, *i.e.*, over three years prior to her first knee surgery. Even assuming Plaintiff's condition improved following her knee surgeries

8

-- which, as noted above, is an issue for which the undersigned makes no finding -- she may still be entitled to disability for a closed period of disability beginning on her application date of March 29, 2014 and ending on the date of such purported improved condition. Thus, in addition to error noted above with regard to Plaintiff's DIB application, the ALJ's also erred with regard to Plaintiff's SSI claim by, at the least, not considering whether she would be entitled to a closed period of disability between her application date and the date of improvement following her knee surgeries. "Cases are subject to remand where an ALJ fails to consider whether a closed period of disability existed." *See Sykes v. Comm'r, Soc. Sec.*, No. CV ELH-16-898, 2017 WL 35436, at *2 (D. Md. Jan. 4, 2017) (collecting cases).

While the undersigned finds reversal and remand appropriate on the forgoing basis, the undersigned also finds error in the ALJ's rejection other limitations set forth by Dr. Barlage in her opinions. In rejecting Dr. Barlage's opinion regarding Plaintiff's ability to sit for up to 2 to 4 hours per workday for 30 minutes at a time, the ALJ found "no documented condition that would reasonably restrict sitting to only 2-4 hours during the day." *Id*. The ALJ's conclusion in this regard is not supported by substantial evidence in the case record for at least two reasons. First, Plaintiff suffers from fibromyalgia, an impairment the ALJ himself found to be a severe impairment (PageID 1777-79) and one that can impact Plaintiff's ability to sit during the workday. Second, Dr. Barlage noted that Plaintiff has degenerative disc disease of the lumbar spine and treatment records reflect not only complaints of such lumbar and sacral pain (exacerbated by activities such as sitting), but also document clinical findings of the lumbar spine and sacroiliac joint supportive of such symptoms.[9] PageID 2419-20.

The undersigned also questions the ALJ's conclusion that "[t]he record contains no

---

[9] Notably, the ALJ failed to consider any impairments of Plaintiff's spine at any step of the sequential disability review process.

9

evidence of any impairment affecting the upper extremities." PageID 1790. Again, Plaintiff suffers from fibromyalgia and, in addition, the record reflects many instances wherein Plaintiff sought medical treatment for complains of pain and tenderness in her shoulders, elbows, hands, and fingers. PageID 899, 1067, 1440, 1460, 1464, 1467, 1474, 1489, 1503, 2402. Records suggest that these symptoms are attributable to Plaintiff's primary diagnosis of fibromyalgia. PageID 1389, 1474, 1481, 1489. The ALJ should reassess this conclusion on remand.

Finally, with regard to Dr. Barlage's opinions concerning Plaintiff's limitations arising from her mental health impairments, the undersigned would also direct the ALJ, on remand, to reconsider such opinion evidence in light of the following concerns.

First, in assessing Plaintiff's mental health limitations overall, including her alleged symptoms arising therefrom, the ALJ noted on several occasions that Plaintiff's treatment for mental health impairments has been "limited" or "minimal," and commented that Plaintiff either missed appointments or failed to follow through with treatment. PageID 1785, 1790-92. However, ALJs "must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment." Soc. Sec. Ruling ("SSR") 96-7p, 1996 WL 374186, at *7-8 (July 2, 1996). The record here is replete with reasons that could explain Plaintiff's infrequent or inconsistent mental health treatment -- such as homelessness (PageID 2168), a lack of financial resources (PageID 1481), lack of transportation (PageID 1481, 2112, 2115), not feeling well (PageID 2111), and family health issues (PageID 1460, 1467). Further, as noted by the Sixth Circuit, "it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation."

*Blankenship v. Bowen*, 874 F.2d 1116, 1124 (6th Cir. 1989).

Second, the ALJ noted on several occasions that Plaintiff's allegation regarding suffering from hallucinations is merely a subjective complaint, and that no medical provider "reported observing behavior consistent with that allegation." PageID 1790, 1792. However, a treatment record from July 12, 2016 notes that, during a counseling session, Plaintiff "disassociated," becoming "very quiet" and speaking "in whispers . . . very slowly." PageID 2120. As noted in that treatment record, when asked her age, Plaintiff responded that she was "6 or 7," and stated that she "was hiding in a closet for her safe place." *Id*. On that occasion, when Plaintiff "became aware again[,]" she "was very emotional." *Id*. Around that same time, hallucinations were also noted on a mental status examination along with notations that Plaintiff displayed delusionary thought content. Doc. 2141. Such records appear to belie the ALJ's conclusion that Plaintiff's symptoms in this regard have not been observed by treatment providers on examination.

## IV.

When, as here, the ALJ's non-disability determination is unsupported by substantial evidence, the Court must determine whether to reverse and remand the matter for rehearing, or to reverse and order an award of benefits. The Court has authority to affirm, modify or reverse the Commissioner's decision "with or without remanding the cause for rehearing." 42 U.S.C. § 405(g); *Melkonyan v. Sullivan*, 501 U.S. 89, 100 (1991). Generally, benefits may be awarded immediately "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994); *see also Abbott v. Sullivan*, 905 F.2d 918, 927 (6th Cir. 1990); *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 782 (6th Cir. 1987). As noted above, the undersigned concludes that a remand for further proceedings is proper.

11

**V.**

**IT IS THEREFORE RECOMMENDED THAT:** (1) the ALJ's non-disability finding be found unsupported by substantial evidence, and **REVERSED**; (2) this matter be **REMANDED** to the Commissioner under the Fourth Sentence of 42 U.S.C. § 405(g) for proceedings consistent with this opinion; and (3) this case be **CLOSED**.

Date:  July 23, 2020                          s/ Michael J. Newman
                                                               Michael J. Newman
                                                               United States Magistrate Judge

## **NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendation.  This period is not extended by virtue of Fed. R. Civ. P. 6(d) if served on you by electronic means, such as via the Court's CM/ECF filing system.  If, however, this Report and Recommendation was served upon you by mail, this deadline is extended to **SEVENTEEN DAYS** by application of Fed. R. Civ. P. 6(d).  Parties may seek an extension of the deadline to file objections by filing a motion for extension, which the Court may grant upon a showing of good cause.

Any objections filed shall specify the portions of the Report and Recommendation objected to, and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based, in whole or in part, upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.

A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.  As noted above, this period is not extended by virtue of Fed. R. Civ. P. 6(d) if served on you by electronic means, such as via the Court's CM/ECF filing system.  If, however, this Report and Recommendation was served upon you by mail, this deadline is extended to **SEVENTEEN DAYS** by application of Fed. R. Civ. P. 6(d).

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140, 153-55 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).